# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| XPO LOGISTICS FREIGHT, INC. )<br>f/k/a CON-WAY FREIGHT INC., )<br>a Delaware corporation, )<br>) <br>        Movant, )<br>) <br>v. )<br>) <br>YRC, INC., )<br>) <br>        Respondent. ) | Case No. 16-mc-224-CM-TJJ<br><br>Relating to an action pending in<br>the United States District Court for the<br>District of Utah<br>Case No. 2:16-cv-00194-JNP-BCW |

## MEMORANDUM AND ORDER

XPO Logistics Freight, Inc. ("XPO") has filed a motion to compel non-party YRC, Inc. ("YRC") to produce subpoenaed documents (the "Motion"), pursuant to Fed. R. Civ. P. 45(d). The subpoena duces tecum (the "Subpoena") was issued out of a civil case filed in the District of Utah (the "Utah case")[1] and required compliance in Kansas. YRC has filed a response and XPO has filed a reply to the Motion. The defendant in the Utah case, James Fox ("Fox"), has not taken a position in this case regarding the Subpoena.

The Motion has been extensively briefed by XPO and YRC.[2] The Court has carefully reviewed all of the briefing on the Motion, the Subpoena, YRC's objections to the requested documents, and the complaint and answer filed in the Utah case.[3] On November 18, 2016, YRC

---

[1] *XPO Logistics Freight, Inc. v. Fox*, Case No. 2:16-cv-00194-JNP-BCW (D. Utah)

[2] After reviewing the extensive briefing, the Court finds that oral argument would not materially assist in the disposition of the Motion and that an evidentiary hearing would not be helpful. *In re Cessna 208 Series Aircraft Prod. Liab. Litig.*, No. 05-MD-1721-KHV, 2009 WL 6561225, at *1 n.1 (D. Kan. Nov. 4, 2009).

[3] The Court is also aware of three other motions to compel filed by XPO seeking compliance with subpoenas served upon YRC (similar to the instant Motion) in other cases currently pending before this Court. *See* D. Kan. Case Nos. 16-mc-220-JAR-TJJ, 16-mc-221-JWL-TJJ, and 16-mc-222-JWL-TJJ.

filed in this case a Motion for Leave to File a Supplemental Brief in Opposition to Motion to Compel (ECF No. 11). YRC requests leave to file a Supplemental Brief, claiming it only recently obtained deposition transcripts of two current XPO employees who supervised Fox. The Court has reviewed and considered YRC's proposed Supplemental Brief (ECF No. 11-4) in making its rulings herein. For the reasons discussed below, XPO's Motion to Compel is granted in part and denied in part.

## I.     FACTUAL BACKGROUND

XPO and YRC are both large LTL logistics providers in the United States.  They are competitors. Fox is a former employee of XPO, who subsequently went to work for YRC. XPO (then known as Con-Way Freight) employed Fox from January 1995 to January 8, 2016.  The complaint filed by XPO in the Utah case alleges the following facts:

XPO employed Fox as a Service Center Manager at the Salt Lake City facility. Fox was responsible for the development and management of a leadership team of 12 managers. His responsibilities included: achieving productivity, cost reduction and profit and loss targets; recruiting, selecting, training and managing employees; working closely with sales account executives who operated out of the Salt Lake City Service Center to identify and participate in opportunities for growth, network balance and customer efficiency; negotiating and implementing cartage and vendor agreements; executing fleet strategy and tactics to increase profitability and reduce costs; and collaborating with multiple functional areas such as line haul, fleet maintenance, safety and procurement to ensure strategic initiatives were implemented successfully and sustained.

During his employment at XPO, Fox had access to highly confidential data and trade secret information, including operational software such as Business Navigator and Business

Intelligence, which are related enterprise resource planning software; financial performance reports; customer specific account information and shipping activity levels; shipping lane volumes, capacity and profitability; and expense to revenue operation ratios for particular customers. The Business Navigator and Business Intelligence systems provided Fox with detailed information about the profitability of various shipping "lanes" used by customers, including the costs incurred by XPO to make shipments in particular lanes. In addition, the periodic financial performance reports that Fox received contained operational costs tracking, wage to revenue ratios, expense to revenue ratios, as well as operational, performance and productivity metrics.

Fox was subject to a written Code Business Ethics (the "Code") and Business Ethics Policy-Confidential Information Policy (the "Confidential Information Policy") throughout the course of his employment with XPO. Fox received training on the Code and the Confidential Information Policy in 2006, 2012, and 2015, acknowledged receipt of them, and specifically certified his understanding of and compliance with them.  The Code and Confidential Information Policy preclude the use or disclosure of XPO's or its customers' confidential business information.

Fox terminated his employment with XPO on or about January 8, 2016. Before he returned his XPO-issued smart phone and despite XPO's demand, Fox refused to provide XPO with the passcode he adopted for the phone. This precludes XPO from obtaining the encrypted data stored on the phone. Fox has also admitted to taking measures to ensure that certain data on the phone was deleted.

Immediately after his resignation, Fox went to work for YRC, as the Distribution Center Manager for YRC's Salt Lake City location. The duties and responsibilities Fox is performing at

YRC are the same or nearly identical to those he was performing while at XPO. Fox has used or disclosed, threatens to use or disclose, or will, by nature of the substantial similarity in employment positions and incentives to do so, inevitability will use or disclose trade secret information of XPO for the benefit of YRC.

During discovery in the Utah case, Fox objected to at least four discovery requests served by XPO. Specifically, in his response to XPO's requests for production 2, 3, 4, and 11, Fox asserted several objections, contending that "certain items . . . are confidential and sensitive business and personal information."[4]

XPO served the Subpoena upon YRC requesting production of thirteen categories of documents. YRC served its Objection the Subpoena, raising objections to each request and refusing to produce any documents. The following Subpoena document requests are in dispute:

1. All Documents that:

    (a) you directly or indirectly received from Fox prior to his start date with YRC; and

    (b) you directly or indirectly received from Fox at any time that mention or reference the XPO Subjects or the Removable Devices.

2. All Documents reflecting or relating to any communications between you and Fox on the subject of his possible employment or affiliation with YRC, including but not limited to: correspondence, job postings or advertisements; applications, resumes or CVs; business plans; employment contracts; job offers; and calendars, Outlook or similar invitations, agendas, minutes of meetings, credit card statements, expense reports and receipts reflecting travel or meetings on that subject.

3. The following Documents reflecting or relating to Fox's job title, functions, duties, responsibilities, remuneration, benefits and terms and conditions of employment since accepting employment with YRC: his personnel file; organizational charts showing his reporting and supervisory relationships; job descriptions; employment contracts; commission plans; employee handbooks or policies, procedures and restrictive covenants to

---

[4] Def.'s Resps. to Pl.'s First Set of Interrogs. and Reqs. to Produce Docs. (ECF No. 1-3) at 11–12, 15.

which he is subject; his Outlook and other calendars, his expense reports; and quotes, proposals, RFPs and/or presentations on which he has worked.

4. All Documents reflecting or relating to any communications between you and Fox on the XPO Subjects.

5. All Documents relating to or reflecting any actual or prospective changes Fox has suggested, recommended, or approved with respect to: your competitive strategies vis-à-vis XPO Freight; your LTL pricing for particular customers or particular shipping lanes; cost reduction strategies; the addition or subtraction of particular shipping lanes; and/or your target customers.

6. All Documents relating to or reflecting customer sales or marketing calls or efforts Fox has made on YRC's behalf since the date of your first contact with him regarding possible YRC employment, including but not limited to calendars, notes, quotes, proposals, RFPs or presentations.

7. All Documents relating to or reflecting to YRC's decision to hire Fox, including but not limited to internal memoranda, emails, minutes of meetings, notes of meetings and announcements.

8. Any internal announcements concerning your hiring of Fox.

9. All Documents relating to or reflecting any communications you have directly or indirectly with any other person or entity (e.g., customers, the public) regarding the hiring of Fox.

10. All Documents relating to or reflecting any communications between you and Fox on the subject of his XPO Freight employment, including but not limited to any actual or potential post-employment obligations thereto.

11. All Documents relating to or reflecting any comparative or other competitive LTL sales analysis conducted by or on YRC's behalf regarding XPO Freight since your first contact with Fox regarding potential YRC employment.

12. All communications which you sent to or received from (whether directly or by way of cc or bcc) Fox other than through his YRC email address.

13. Documents reflecting all cell phones and land lines Fox has used for YRC business.[5]

---

[5] Subpoena (ECF No. 1-4) at 8–9.

The Subpoena provides that the "time period of these requests shall be from July 1, 2015 to the present."[6]

## II. LAW APPLICABLE TO MOTIONS TO COMPEL COMPLIANCE WITH A SUBPOENA

Federal Rule of Civil Procedure 45(d)(1) requires a party or attorney issuing and serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." When as in this case the subpoenaed party (YRC) serves written objections to the subpoena, then the party serving the subpoena (XPO) may file a motion to compel the production or inspection sought by the subpoena.[7] The court may issue an order requiring such acts, but the order must protect a non-party from "significant expense resulting from compliance."[8] Non-parties responding to Rule 45 subpoenas generally are given heightened protection from discovery abuses.[9]

It is well established that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34.[10] Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "Relevance is broadly

---

[6] Subpoena (ECF No. 1-4) at 7.

[7] Fed. R. Civ. P. 45(d)(2)(B)(i).

[8] Fed. R. Civ. P. 45(d)(2)(B)(ii).

[9] *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008).

[10] *Tank Connection, LLC v. Haight*, No. 13-CV-1392-JTM-TJJ, 2015 WL 3571424, at *3 (D. Kan. June 5, 2015); *Ficep Corp. v. Haas Metal Eng'g, Inc.*, No. 14-243-CM, 2015 WL 566988, at *2 (D. Kan. Feb. 11, 2015); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003) (citing Fed. R. Civ. P. 45(d)(1) advisory committee's note to 1970 amendment and 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (2d ed. 1995)).

construed during the discovery stage."[11] Discovery requests should be considered relevant if there is "any possibility" that the information sought may be relevant to the claims or defenses of any party.[12]

The party requesting discovery bears the minimal burden of showing the request to be relevant on its face, and then the burden shifts to the party resisting discovery.[13] The resisting party cannot simply stand on a conclusory statement that the requested discovery is irrelevant, but instead must either demonstrate that the requested discovery does not come within the broad scope of relevance defined in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm caused by the discovery would outweigh the presumption in favor of broad disclosure.[14]

## III. YRC'S GENERAL OBJECTIONS

### A. Harassment, Undue Annoyance, Embarrassment, Oppression, or Expense

YRC asserts an objection to each request for production in the Subpoena that the request is "designed to harass YRC or to impose undue annoyance, embarrassment, oppression, or expense upon YRC." Other than this conclusory statement, YRC includes no explanation or support for this assertion in its objection to the Subpoena. In its Brief, YRC argues that XPO's complaint against Fox is purely speculative and accuses XPO of conducting a nationwide

---

[11] *Cady v. R & B Servs.–Wichita, LLC*, No. 13-1331-KHV, 2014 WL 1309089, at *1 (D. Kan. Apr. 1, 2014).

[12] *Tomelleri v. Zazzle, Inc.*, No. 13-CV-02576-EFM-TJJ, 2014 WL 7071573, at *2 (D. Kan. Dec. 12, 2014).

[13] *Cady*, 2014 WL 1309089, at *2.

[14] *Speed Trac*, 2008 WL 2309011, at *3.

litigation campaign to inhibit competition and for the purpose of obtaining YRC's highly confidential business information.[15]

The Court disagrees with YRC that the claims XPO asserts against Fox are purely speculative. The complaint asserts a number of specific and detailed allegations against Fox. XPO is not required to prove a prima facie case in order to justify a request for discovery.[16] Nor must XPO state a claim against subpoenaed non-party YRC in order to be entitled to seek appropriate, relevant, and proportional discovery from YRC related to the claims *against Fox*.

Additionally, the Court finds unpersuasive YRC's argument that XPO's filing of lawsuits against its former employees in multiple jurisdictions and serving subpoenas requesting documents from YRC in each of those cases constitutes harassment. To the extent XPO sought to assert claims against its former employees, the filing of multiple lawsuits in different jurisdictions was necessitated by the residences of XPO's former employees in different states. Finally, although YRC argues repeatedly that XPO's claims in the Utah case are futile because Fox did not sign a non-compete or non-solicitation agreement, YRC does not dispute XPO's allegation that Fox was subject to two separate confidentiality agreements restricting his use or disclosure of confidential information.

With respect to YRC's argument that some of the subpoenaed documents could be obtained from Fox, the Court finds this argument unpersuasive. XPO previously served written discovery requests upon Fox, but was unable to obtain requested documents due to Fox's

---

[15] YRC's Brief in Resp. to Pl.'s Mot. to Compel (ECF No. 6) at 2, 10–13.

[16] *Speed Trac*, 2008 WL 2309011, at *3. The Court has also reviewed the portions of John Prescott Burton's deposition testimony cited by XPO and YRC relative to YRC's speculative claims argument and does not find the Burton testimony persuasive with regard to that argument.

objections that the some of the responsive items were confidential and sensitive business and personal information.

YRC's general objection to XPO's Subpoena document requests that they are harassing, or unduly annoying, embarrassing, oppressing, or expensive is therefore overruled.

## IV.   YRC'S SPECIFIC OBJECTIONS

### A.   Requests 1(b) and 4

Subpoena Request 1(b) asks YRC to produce all documents that it "directly or indirectly received from Fox at any time that mention or reference the XPO Subjects or the Removable Devices." Request 4 asks for "[a]ll documents reflecting or relating to any communications between [YRC] and Fox on the XPO Subjects." YRC argues that XPO's definition of "XPO Subjects" is an impossibly broad defined term that includes:

> XPO Freight's business, services, processes, methods, operations, network, carriers, facilities, customers, costs, prices, pricing programs and margins, strategies and plans, sales or performance metrics, data or information, employees, contractors, consultants or officers, including but not limited to: the reports and information identified in paragraphs 8-15 of the Complaint; its gross revenues, net revenues and/or operating ratios (the costs of the services rendered to the customer divided by the revenue obtained from the customer) by XPO customer or by shipping lane; pricing; and/or the Sales Plan Dashboard referenced in the Complaint.[17]

YRC argues that this definition makes Requests 1(b) and 4 overly broad, unduly burdensome, disproportionate to the needs of XPO's case against Fox, and seeks confidential and proprietary business information and trade secrets. Moreover, YRC argues this broad "XPO Subjects" definition would require YRC to disclose its competitive analyses regarding its direct

---

[17] Subpoena (ECF No. 1-4) at 7.

competitor, XPO, without regard to whether YRC's analyses were informed or influenced by Fox or XPO's purported trade secrets.

The Court overrules YRC's objections to the "XPO Subjects" definition for both Requests 1(b) and 4. Although the definition includes a wide range of subjects, Requests 1(b) and 4 themselves are limited to YRC documents received *from Fox* and communications *from Fox* on the subjects pertaining to his former employer XPO. Accordingly, YRC's objections to the "XPO Subjects" definition are overruled.

With respect to the remaining objections, both Requests 1(b) and 4 seek documents relevant on their face to XPO's misappropriation of trade secrets and breach of contract claims against Fox. Moreover, YRC has not met its burden of demonstrating lack of relevance of the requested documents sought by these Requests. Nor has YRC demonstrated that the requested documents—all of which either relate to documents received or communications *from Fox* mentioning XPO Subjects—constitute YRC's confidential and proprietary information or trade secrets entitled to protection.

Finally, the Court does not find that requiring YRC to respond to Requests 1(b) and 4 will subject it to an undue burden. While the Court must quash or modify a subpoena that subjects a subpoenaed party to an "undue burden,[18] the Court recognizes that compliance with a subpoena will inevitably involve some measure of burden to the subpoenaed non-party.[19] The Court therefore will not deny a party access to relevant discovery merely because compliance inconveniences a nonparty or subjects it to some expense.[20] The subpoenaed entity seeking to

---

[18] Fed. R. Civ. P. 45(d)(3)(A)(iv).

[19] *Ficep*, 2015 WL 566988, at *3.

[20] *Id.*

quash or modify the subpoena has the burden to show undue burden.[21] YRC has "provided only conclusory allegations and has not offered any detailed explanation, affidavit, or other evidence demonstrating that it will suffer undue burden and expense complying with the subpoena."[22] Requests 1(b) and 4 are sufficiently limited by subject matter and time frame so that they do not appear to place an undue burden upon YRC. The Court therefore overrules YRC's undue burden objections.

YRC will be required to produce documents responsive to Requests 1(b) and 4.

### B. Requests 2, 7, 8, and 10

Requests 2 and 7, respectively, ask YRC to produce documents relating to communications between YRC and Fox regarding his possible employment with YRC, and documents relating to YRC's decision to hire Fox. Request 8 seeks internal announcements concerning YRC's hiring of Fox. Request 10 seeks communications between YRC and Fox on the subject of his XPO employment. YRC asserted relevancy, overly broad and unduly burdensome objections to these Requests. It also objected to the extent the Requests required disclosure of YRC's confidential business or proprietary information.

These Requests are relevant on their face to XPO's trade secret misappropriation and breach of contract claims against Fox in that they seek YRC documents to or from Fox regarding the XPO Subjects, documents relating to the use, and documents regarding Fox's application for employment or hiring by YRC. Documents indicating what information, if any, Fox provided to YRC regarding XPO or the XPO Subjects and documents regarding the similarities, if any, between Fox's work at XPO and the job for which he was hired at YRC are relevant to the issues

---

[21] *Id.*

[22] *Speed Trac*, 2008 WL 2309011, at *4.

11

in the Utah case. Moreover, YRC has not met its burden of demonstrating lack of relevance of the requested documents. Nor has YRC demonstrated that the requested documents—all of which either relate to communications between YRC and Fox regarding Fox's possible employment with YRC and/or prior employment with XPO, or YRC's hiring decision and internal announcements—constitute YRC's confidential and proprietary information or trade secrets entitled to protection.  Finally, as with the previously discussed requests, YRC has failed to meet its burden of showing that responding to these requests would subject it to an undue burden.  The Requests are limited sufficiently by timeframe and scope so that they do not appear to place an undue burden upon YRC.

The Court therefore overrules YRC's objections, and YRC will be required to produce documents responsive to Requests 2, 7, 8, and 10.

### C. Requests 1(a), 3, 9, 12, and 13

Request 1(a) asks YRC to produce all documents that it directly or indirectly received from Fox prior to his start date with YRC. Request 3 seeks several categories of YRC documents relating to Fox's job duties and employment.  Request 9 seeks production of documents relating to communications YRC had directly or indirectly with "any other person or entity" regarding the hiring of Fox. Request 12 requests all communications YRC sent to or received from Fox other than through his YRC email address. Request 13 seeks cell phone and land lines used by Fox for YRC business.

These requests are overly broad in that they seek certain documents not relevant to XPO's claims or any defense asserted by Fox in the underlying case and, to the extent they do seek documents relevant to the claims or defenses at issue, the requests are unreasonably

duplicative of other requests to which YRC will be ordered to respond.[23] YRC's overly broad and relevancy objections are therefore sustained, and YRC will not be required to produce documents in response to Requests 1(a), 3, 9, 12, and 13.

### D. Requests 5, 6, and 11

Request 5 asks YRC to produce documents relating to changes Fox has suggested, recommended, or approved regarding YRC's competitive strategies vis-à-vis XPO, YRC's LTL pricing for particular customers or shipping lanes; cost reduction strategies, the addition or subtraction of particular shipping lanes, and/or YRC's target customers. Request 6 seeks customer sales or marketing calls or efforts Fox has made for YRC since the date of YRC's first contact with Fox regarding possible YRC employment (including calendars, notes, quotes, proposals, RFPs or presentations). Request 11 seeks comparative or other competitive LTL sales analysis conducted by or on YRC's behalf regarding XPO since YRC's first contact with Fox regarding potential YRC employment.

YRC objects to these Requests on grounds they would require production of its "confidential and proprietary technical, business, and financial information, and trade secrets," including YRC's competitive strategies regarding customers and/or potential customers.

Fed. R. Civ. P. 45(d)(3)(B)(i) provides, in pertinent part, that the court for the district where compliance with the subpoena is required may, on motion, quash or modify the subpoena if it requires "disclosing a trade secret or other confidential research, development, or

---

[23] E.g., Request 1(a), to the extent it requests relevant documents, is duplicitous of Request 1(b); Request 3, to the extent it requests relevant documents, is duplicitous of Request 2.

commercial information." However, "[t]here is no absolute privilege for trade secrets and similar confidential information."[24]

The party resisting discovery must first show that the information sought is a trade secret or confidential information and then demonstrate that its disclosure might be harmful.[25] If these requirements are met, then the burden shifts to the party seeking the discovery to show that disclosure of the trade secrets or confidential information is relevant and necessary to the action.[26] The court must also balance the need for the trade secrets against the claim of injury resulting from disclosure.[27]

These requests seek information regarding YRC's business with its customers including, for example, its proposals, RFP's, and cost reduction strategies. This is confidential and proprietary business information of YRC, and its disclosure could be harmful to YRC. XPO does not contend otherwise. The burden therefore shifts to XPO to establish that disclosure of this confidential information is relevant and necessary to the underlying action.

With one exception, these requests seek YRC's confidential or proprietary information irrespective of any link to or connection with XPO's claims against Fox. To this point, XPO has not asserted any claims against YRC in the Utah case. In other requests with respect to which the Court will require YRC to respond, XPO specifically requests documents regarding or reflecting communications to or from Fox concerning XPO or the XPO Subjects. Those requests

---

[24] *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979).

[25] *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981). *See also Speed Trac*, 2008 WL 2309011, at *4.

[26] *Speed Trac*, 2008 WL 2309011, at *4.

[27] *Id.*

encompass the documents responsive to Requests 6 and 11 to the extent they reference or relate to XPO's customers. However, the Court finds that XPO has not met its burden to show the broader requests at issue here—which seek disclosure of YRC's confidential and proprietary information without any link to or connection with XPO's claims against Fox—are relevant and necessary to the claims asserted in the Utah case. The one exception to this is Request 5, which seeks "all documents relating to or reflecting any actual or prospective changes Fox has suggested, recommended, or approved with respect to [YRC's] competitive strategies vis-à-vis XPO." Request 5 seeks documents that are relevant to the claims asserted by XPO against Fox, and the Court finds XPO's need for any such documents outweighs the potential injury to YRC from disclosure.

Accordingly, YRC's objections to these Requests on grounds that they would require production of its confidential and proprietary technical, business, and financial information are sustained, and it will not be required to produce documents in response to Requests 6 and 11. The Court, however, overrules YRC's confidential and proprietary objection to Request 5. The Court further overrules YRC's relevance and overly broad and undue burden objections to Request 5, and YRC will be required to produce all documents responsive to that Request.

**IT IS THEREFORE ORDERED THAT** Movant XPO's motion to compel Respondent YRC to produce subpoenaed documents (ECF No. 1) is granted in part and denied in part. The motion to compel is granted with respect to XPO's Subpoena Requests 1(b), 2, 4, 5, 7, 8, and 10 and YRC is ordered to produce documents responsive to these Requests **within twenty-one (21) days of the date of this Order**. The motion to compel is denied with respect to XPO's Subpoena Requests 1(a), 3, 6, 9, 11, 12, and 13.

**IT IS FURTHER ORDERED THAT** YRC's Motion for Leave to File a Supplemental Brief in Opposition to Motion to Compel (ECF No. 11) is granted.  The Court has reviewed and considered YRC's Supplemental Brief (ECF No. 11-4) in making its ruling herein.

IT IS SO ORDERED.

Dated November 30, 2016 in Kansas City, Kansas.

*Teresa J. James*

Teresa J. James
U. S. Magistrate Judge